Angel Luis Santos **SERRANO,** Plaintiff

v.

Zoe Laboy **ALVARADO,**
**et al., Defendants**

No. 98–2444 (PJ).

United States District Court,
D. Puerto Rico.

Oct. 22, 2001.

Angel Luis Santos Serrano, Pro Se, Institución Regional del Sur, Ponce, for Plaintiff.

Leticia Ramírez–Rangel, Esq., Commonwealth Department of Justice, Federal Litigation Division, Karen M. Ocasio–Cabre-

ra, Esq., Lespier & Muñoz–Noya, San Juan, for Defendant.

## OPINION AND ORDER

PIERAS, Senior District Judge.

## I. INTRODUCTION

The Court has before it Defendants Ivette del Valle, Víctor Pacheco, Johnny Colón Cintrón and José A. Vázquez Burgos' Motion for Summary Judgment (**docket No. 60**). Plaintiff Angel Luis Santos Serrano brings this action against Defendants under 42 U.S.C. § 1983, claiming that he was beaten by security guards and denied medical attention, in violation of the Eighth Amendment to the United States Constitution. The Court **DISMISSES** Plaintiff's claim for failure to exhaust administrative procedures. Accordingly, the Court **DENIES AS MOOT** Defendants' Motion for Summary Judgment.

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that on November 13, 1998 he was assaulted by a number of correctional officers, at the Guayama Correctional Facility, while the Warden of the facility was present, and that the Warden did not intervene to prevent the officers from assaulting him. Plaintiff contends that he requested medical attention, for the injuries resulting from said assault, and that it was denied to him.

As a result of the November 13, 1998 incident, Plaintiff alleges that he filed a grievance using the prisoners grievance procedure and that his request for remedy was denied. Plaintiff also states that he did not appeal the final determination of

the institution for three reasons: 1) Plaintiff was transferred to the Wackenhut Institution in Bayamón, Puerto Rico on November 17, 1998 and was told, by one of the employees of the grievance committee, that he could not appeal his grievance from there; 2) exhausting administrative remedies would delay getting the complaint before the Court; and 3) the administrative remedies constitute a useless and ineffective action and do not provide adequate remedy.

## III. DISCUSSION

### A. SECTION 1983

■ Section 1983 provides for injunctive relief and the recovery of damages against individuals and governmental entities that deprive a plaintiff of rights, privileges, or immunities secured by the Constitution and laws of the United States.[1] The U.S. Supreme Court has "repeatedly held that the coverage of section 1983 must be broadly construed." *Dennis v. Higgins*, 498 U.S. 439, 443, 111 S.Ct. 865, 868, 112 L.Ed.2d 969 (1991) (quoting *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 105, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989)). A broad construction is consistent with the legislative history of section 1983, which was enacted as a remedial measure. *See id.* (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 684, 98 S.Ct. 2018, 2032, 56 L.Ed.2d 611 (1978)).

■ In order to establish a prima facie cause of action under section 1983, Plaintiff must prove that Defendants' conduct deprived him of a constitutional right. *See Parratt v. Taylor*, 451 U.S. 527, 535,

---

1. 42 U.S.C. § 1983 provides, in relevant part: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State of Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to any deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330–331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). An analysis of this issue requires the Court to consider both whether a substantive constitutional violation occurred, and whether Defendants' conduct was the cause in fact of Plaintiff's constitutional deprivation.

### B. Eighth Amendment

■ "[I]t is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.' " *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994) (quoting *Helling v. McKinney,* 509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)). The cruel and unusual punishment clause of the Eighth Amendment imposes a duty upon prison officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of inmates.' " *Id.* (quoting *Hudson v. Palmer,* 468 U.S. 517, 526–27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)). This duty arises from the State's assumption of custody over, and incarceration of, persons predisposed to antisocial and perhaps violent behavior, while at the same time "having stripped them of virtually every means of self-protection and foreclosed their access to outside aid . . . ." *Id.* at 833, 114 S.Ct. at 1977. The Court finds that Plaintiff's allegation of being deprived of medical attention falls squarely within this Eighth Amendment right and additionally should be considered a part of the general "prison conditions."

The First Circuit has not yet spoken as to whether excessive force used by Prison Guards should be considered a "prison condition." However, both the Third and Sixth Circuits have found it to be so.

■ The Third Circuit found that excessive force is a "prison condition" for purposes of the Prison Litigation Reform Act of 1996 [2] "PLRA", such that a prisoner must first exhaust administrative remedies before bringing a Section 1983 action alleging prison guards intentional acts of violence. *See generally Booth v. Churner,* 206 F.3d 289 (3rd Cir.2000), *certiorari granted* 531 U.S. 956, 121 S.Ct. 377, 148 L.Ed.2d 291, *affirmed.* The Sixth Circuit found that the term "prison conditions," as used in the PLRA, includes claims of excessive force, thereby subjecting to the Act's administrative exhaustion requirement an inmate's claims of use of excessive force by corrections officer and of another officer's conspiring and assisting in that use of force. *See Wolff v. Moore,* 199 F.3d 324 (6th Cir.1999). This Court agrees with both the Third and Sixth Circuits in their decisions to include claims of excessive force by prison officials as an Eighth Amendment claim based upon prison conditions.

■ To state a claim under the Eighth Amendment based on prison conditions, two requirements must be satisfied. *See Giroux v. Somerset County,* 178 F.3d 28, 32 (1st Cir.1999). First, the alleged deprivation of adequate conditions of confinement must be objectively serious. In other words, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* Second, the official involved must have had a sufficiently culpable state of mind, which

---

**2.** The Court analyzes Plaintiff's case under this Act in the following section of this opinion.

the U.S. Supreme Court has defined as "deliberate indifference" to an inmate's health or safety. *Id.* (citing *Farmer,* 511 U.S. at 834, 114 S.Ct. at 1977). In *Farmer,* the Supreme Court delineated the contours of the "deliberate indifference" standard, finding that it entailed something more than mere negligence, and something less than the intentional or knowing infliction of harm. *See Farmer,* 511 U.S. at 835–36, 114 S.Ct. at 1978. More specifically, the Supreme Court held that a prison official must know of and disregard an excessive risk to inmate health or safety; "the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, 114 S.Ct. at 1979.

### C. Prison Litigation Reform Act of 1996

 Prior to analyzing whether Plaintiff has stated a claim under the Eighth Amendment, however, the PLRA now requires Courts first to assess whether an inmate has exhausted administrative remedies before bringing suit in federal court. *See Perez v. Wisconsin Dept. of Corrections,* 182 F.3d 532, 536 (7th Cir.1999) (a court must not proceed to render a decision on the merits until it has considered whether the inmate has complied with the PLRA's exhaustion requirement). The relevant statutory provision, 42 U.S.C. § 1997(e)(a), states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Although

the plain language of section 1997(e)(a) mandates that prisoners exhaust available administrative remedies before filing a federal claim, Plaintiff contends that he was not required to exhaust administrative procedures because the grievance procedure in place did not provide an adequate remedy.[3]

The First Circuit has not yet spoken on how section 1197(e)(a) should be construed. For this reason, this Court looks to the other Appeals Courts for guidance on this subject. There exists a split among the Circuit Courts of Appeal on how section 1997(e)(a) should be construed. More specifically, the Courts disagree on whether an inmate must exhaust administrative remedies when the administrative procedure cannot provide the relief sought, which is generally the case where an inmate seeks monetary damages. In holding that an inmate need not avail himself of administrative remedies in such cases, the Tenth Circuit reasoned that while the statutory language requires the exhaustion of "available" administrative remedies, a remedy incapable of providing the relief sought cannot be considered an "available remedy." *See Garrett v. Hawk,* 127 F.3d 1263, 1266 (10th Cir.1997). The Fifth and Ninth Circuits, and several district courts, similarly have held that an inmate need not exhaust administrative remedies where monetary, as opposed to injunctive, relief is sought and the administrative process does not provide for such a remedy. *See Rumbles v. Hill,* 182 F.3d 1064, 1069 (9th Cir.1999) ("Exhaustion of administrative remedies under section 1997(e)(a) is not required if a prisoner's section 1983 claim seeks only money damages and if the cor-

---

**3.** Although Plaintiff does not specifically state the remedy which he seeks, he has asked to be compensated for both mental and physical damages. The Court takes this "compensation" to mean that the Plaintiff is seeking monetary damages. The Court further gives Plaintiff the benefit of the doubt that the alleged "lack of an adequate remedy," under the administrative procedure, stems from the desire for monetary damages.

rectional facility's administrative grievance process does not allow for such an award."); *Lunsford v.. Jumao–As,* 155 F.3d 1178, 1179 (9th Cir.1998); *Whitley v. Hunt,* 158 F.3d 882, 886–87 (5th Cir.1998); *see also White v. Fauver,* 19 F.Supp.2d 305, 313, 316–17 (D.N.J.1998); *Polite v. Barbarin,* No. 96 Civ. 6818(DLC), 1998 WL 146687, at *2 (S.D.N.Y. Mar.25, 1998); *Lacey v. C.S.P. Solano Medical Staff,* 990 F.Supp. 1199, 1205 (E.D.Ca.1997) (holding that when "an institutional administrative procedure is not empowered to achieve the end sought by plaintiff ... it is not an 'available' administrative remedy within the ordinary meaning of that word").

On the other hand, the Sixth, Seventh, and Eleventh Circuits have held that an inmate bringing a conditions-of-confinement claim seeking monetary damages must exhaust the correctional facility's internal grievance procedure regardless of whether that procedure provides for the desired relief. *See Lavista v. Beeler,* 195 F.3d 254, 256–57 (6th Cir.1999); *Wyatt v. Leonard,* 193 F.3d 876 (6th Cir.1999); *Perez v. Wisconsin Dept. of Corrections,* 182 F.3d 532, 537 (7th Cir.1999); *Alexander v. Hawk,* 159 F.3d 1321, 1324 (11th Cir.1998), *reh'g en banc denied,* 172 F.3d 884 (11th Cir.1999). The Eleventh Circuit based its decision on a careful analysis of the legislative history of the PLRA. The precursor to section 1997e(a) required the exhaustion of "such plain, speedy, and effective administrative remedies as are available." 42 U.S.C. § 1997e(a)(1) (1994) (amended 1996). The U.S. Supreme Court, in *McCarthy v. Madigan,* 503 U.S. 140, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992), relied on this language in concluding that a prisoner seeking money damages, which the available administrative process had no power to award, had no "effective" remedy available to him and thus need not exhaust administrative remedies. *See McCarthy,* 503 U.S. at 150, 112 S.Ct. at 1089. Con-

gress then amended the statute to require exhaustion of "such administrative remedies as are available." 42 U.S.C. § 1997(e)(a). The Eleventh Circuit found that this shift in statutory language indicated "that Congress no longer wanted courts to examine the effectiveness of administrative remedies but rather to focus solely on whether an administrative remedy program was 'available' in the prison involved." *Alexander,* 159 F.3d at 1326. The Court further emphasized that in contrast to judicially-crafted exhaustion doctrines, congressionally-mandated exhaustion divests the courts of the authority to waive the requirement if exhaustion would be futile or the remedy inadequate. *See id.* at 1326 (citing *Weinberger v. Salfi,* 422 U.S. 749, 766, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 (1975) (where exhaustion is statutorily mandated as a jurisdictional prerequisite, "the requirement ... may not be dispensed with merely by a judicial conclusion of futility.")).

The context in which Congress passed the PLRA bolstered the Eleventh Circuit's conclusion: the mandatory exhaustion requirement was enacted as part of an effort "to curtail frivolous and abusive prisoner litigation." *Id.* at 1324. In fact, by 1995 prisoners were bringing more than twenty-five percent of the cases filed in the federal district courts. *Id.* (citing *Roller v. Gunn,* 107 F.3d 227, 230 (4th Cir.1997)). And Congressional findings indicated that prisoners filed more frivolous lawsuits that any other class of persons. *Alexander,* at 1324.

Mandatory exhaustion also serves important interests. "Although it may make sense to excuse exhaustion of the prisoner's complaint where the prison system has a flat rule declining jurisdiction over such cases, it does not make sense to excuse the failure to exhaust when the prison system will hear the case and at-

tempt to correct legitimate complaints, even though it will not pay damages." *Lavista*, 195 F.3d at 257. Thus, an inmate may be successful in having the prison at least review its policies and procedures, and perhaps halting an infringing practice, even if he cannot receive monetary damages. *See id.* In addition, other policy considerations favor exhaustion as a general matter: it permits the agency to develop the necessary factual background upon which decisions should be based; it allows the agency to exercise its discretion or apply its expertise; it improves the efficiency of the administrative process; it conserves scarce judicial resources since the complaining party may vindicate rights on the administrative level without the need for court intervention; it gives the agency a chance to discover and correct its own errors; and it avoids the possibility that frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures. *See Alexander*, 159 F.3d at 1327.

This Court is convinced by the arguments in favor of requiring exhaustion in cases such as this. The most logical interpretation of the amendments to the statutory language, particularly in view of the legislative history, is that Congress intended to effect a change in the law as stated in *McCarthy*, rendering exhaustion mandatory where an administrative procedure is available, not only where such procedure furnishes an effective remedy. Further, the policy considerations favoring exhaustion far outweigh the slight burden it imposes on inmates to present their claims first to the relevant agency. The two district courts in the First Circuit to have addressed the issue, and many other district courts, have also been convinced by the forcefulness of the arguments in favor of exhaustion. *See Rivera v. Garcia,*

192 F.R.D. 57 (D.Puerto Rico 2000); *Feliciano v. Servicios Correccionales*, 79 F.Supp.2d 31 (D.Puerto Rico 2000); *Murphy v. Magnusson*, No. Civ. 98–439–P–C, 1999 WL 615895, *2 (D.Me. July 27, 1999); *see also McNatt v. Unit Manager Parker*, 2000 WL 307000, (D.Conn. Jan.18, 2000); *A.N.R. ex rel. Reed v. Caldwell*, 111 F.Supp.2d 1294, 1298 (M.D.Ala.2000); *McGrath v. Johnson*, 67 F.Supp.2d 499, 510 (E.D.Pa.1999); *Sallee v. Joyner*, 40 F.Supp.2d 766, 770 (E.D.Va.1999); *Beeson v. Fishkill Correctional Facility*, 28 F.Supp.2d 884, 892–95 (S.D.N.Y.1998), *overruled on other grounds, Nussle v. Willette*, 224 F.3d 95 (2d Cir.2000); *Moore v. Smith*, 18 F.Supp.2d 1360, 1364 (N.D.Ga. 1998); *Bearden v. Godfrey*, No. C98–2294 CAL(PR), 1998 WL 456294, *1 (N.D.Cal. July 27, 1998); *Spence v. Mendoza*, 993 F.Supp. 785, 787–88 (E.D.Cal.1998); *Gibbs v. Bureau of Prison Office*, 986 F.Supp. 941, 943–44 (D.Md.1997). For these reasons, the Court finds that Plaintiff must exhaust administrative remedies prior to bringing an action related to prison conditions. Because Plaintiff does not dispute that he failed to exhaust administrative remedies, this action must be dismissed.

## IV. CONCLUSION

In view of the foregoing discussion, the Court hereby **DISMISSES WITHOUT PREJUDICE** the complaint for failure to exhaust administrative remedies. As a result, the Court **DENIES AS MOOT** Defendants' Motion for Summary Judgment.

**IT IS SO ORDERED.**