[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 96-3752
_____

D. C. Docket No. 96-276-Civ-Oc-10

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
11/05/98
THOMAS  K. KAHN
CLERK

MICHAEL ALEXANDER,

Plaintiff-Appellant,

versus

KATHLEEN HAWK, Director,  Federal Bureau of Prisons, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____
**(November 5, 1998)**


Before HATCHETT, Chief Judge, HULL, Circuit Judge, and MOORE[*], District Judge.

HULL, Circuit Judge:

Michael Alexander, a federal prisoner, brought suit against prison officials claiming that their enforcement of new federal legislation  restricting prisoners' access to magazines which are sexually explicit or feature nudity violates his First Amendment rights.  Alexander appeals the

_____

[*]Honorable William T. Moore, Jr., U.S. District Judge for the Southern District of Georgia, sitting by designation.

district court's dismissal of his action for failure to exhaust administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a) (1996). After review, we affirm.

## I. Facts

Since 1979, the Federal Bureau of Prisons' ("BOP") regulations have prohibited inmates from receiving sexually explicit materials deemed potentially detrimental to security, good order, or discipline, such as materials depicting sadomasochism, bestiality, or involving children. See 28 C.F.R. §§ 540.70-540.71. In 1996, Congress enacted the Ensign Amendment further prohibiting the BOP from using funds "to distribute or make available . . . to a prisoner" any commercially published information or material that "is sexually explicit or features nudity," as follows:

> None of the funds made available in this Act to the Federal Bureau of Prisons may be used to distribute or make available any commercially published information or material to a prisoner when it is made known to the federal official having authority to obligate or expend such funds that such information or material is sexually explicit or features nudity.

Pub. L. No. 104-208, § 614, 110 Stat. 3009 (Sept. 30, 1996).[1]

In response to the Ensign Amendment, the BOP enacted Program Statement Number 5266.07 and regulations in 28 C.F.R. § 540.72. Section 540.72 defines the Ensign Amendment's terms, such as "nudity," "features," and "sexually explicit." § 540.72(b)(1)-(4). Section 540.72

---

[1] The Ensign Amendment was enacted as section 614 of the Omnibus Consolidated Appropriations Act of 1997. The Ensign Amendment was upheld by the D.C. Circuit. Amatel v. Reno, ---F.3d---, (Sept. 15, 1998) (Wald, J., dissenting), reversing 975 F. Supp. 365 (D.D.C. 1997).

2

also explains the BOP's process for returning prohibited materials and for notifying the sender, publisher, and inmate of that action. § 540.72(a).

The Program Statement provides greater detail about how the BOP will determine whether a publication "features nudity" or "is sexually explicit" and how the prohibited materials will be returned. For example, the Program Statement specifically mentions that National Geographic, the Sports Illustrated swimsuit issue, and Victoria's Secret catalog are not considered to "<u>feature</u> nudity," but warns that even these publications could be prohibited if the "current practices" of their publishers change. <u>Id</u>. at 7. The Program Statement provides that "inmates may use the Administrative Remedy Program to appeal return of the material." <u>Id</u>. at 6.

On November 5, 1996, BOP officials notified inmates that these new restrictions would become effective on December 1, 1996, and advised inmates to cancel their subscriptions to any prohibited materials. On November 15, 1996, Alexander filed this <u>Bivens</u> action against the defendants, challenging not only the constitutionality of the Ensign Amendment but also the BOP's interpretation and implementation of the Ensign Amendment through its regulations and Program Statement. Alexander sought an injunction, declaratory relief, and monetary damages.

On November 20, 1996, the district court <u>sua sponte</u> dismissed without prejudice Alexander's action for failure to exhaust administrative remedies as required by section 1997e(a) of the PLRA. 42 U.S.C. § 1997e(a) (1996).[2] The district court also denied Alexander's motion

---

[2] Although not officially part of the record on appeal, Alexander's Supplemental Brief mentions that he attempted to obtain administrative relief through the ARP <u>after</u> the district court dismissed this action. <u>Id</u>. at 16 n.11. Alexander's Supplemental Brief also states that his ARP grievance ultimately was rejected on February 19, 1997. <u>Id</u>. However, whether the district court properly dismissed Alexander's action without prejudice must be examined as of the time of that

3

for injunctive relief due to non-compliance with Federal Rule of Civil Procedure 65 and Local Rules 4.05 and 4.06. Alexander timely appealed.[3]

## II. Standard of Review

The pre-PLRA section 1997e(a) granted district courts discretion whether to require a prisoner to exhaust his administrative remedies.[4] A district court's dismissal for failure to exhaust was reviewed only for abuse of discretion. See Irwin v. Hawk, 40 F.3d 347, 348 (11th Cir. 1994); see also McCarthy v. Madigan, 503 U.S. 140, 144, 112 S. Ct. 1081, 1086, 117 L. Ed. 2d 291 (1992) (noting, in the pre-PLRA context, that "where Congress has not clearly required exhaustion, sound judicial discretion governs").

As outlined in detail later, Congress now has mandated exhaustion in the PLRA. 42 U.S.C. § 1997e(a). Other circuits have held that the standard of review of dismissals for failure to exhaust under the PLRA is de novo. See Jenkins v. Morton, 148 F.3d 257, 259 (3d Cir. 1998)

---

dismissal.

[3] On September 30, 1997, Judge Tjoflat of this Court appointed an attorney to represent Alexander on appeal. After Alexander's motion to have his appointed attorney withdraw was denied, Alexander disavowed the Supplemental Brief filed on his behalf by the attorney. However, this disavowal does not impact the outcome of this appeal.

None of the defendants was ever served or entered an appearance. However, the United States of America filed an amicus brief.

[4] This previous version of section 1997e(a) provided as follows:

(1) Subject to the provisions of paragraph (2), in any action brought pursuant to section 1983 of this title by an adult convicted of a crime confined in any jail, prison, or other correctional facility, the court shall, if the court believes that such a requirement would be appropriate and in the interests of justice, continue such case for a period of not to exceed 180 days in order to require exhaustion of such plain, speedy, and effective administrative remedies as are available.

42 U.S.C. § 1997e(a)(1) (1994) (amended 1996) (emphasis supplied).

(exercising "plenary review" of a district court's dismissal for failure to exhaust administrative remedies under PLRA's section 1997e(a)); White v. McGinnis, 131 F.3d 593, 595 (6th Cir. 1997) (reviewing de novo district court's dismissal pursuant to PLRA's section 1997e(a) for failure to exhaust remedies); Garrett v. Hawk, 127 F.3d 1263, 1264 (10th Cir. 1997) (same).

While this issue has not been addressed, this Circuit repeatedly has held that a district court's interpretation and application of a statute are subject to de novo review. See, e.g., Ochran v. United States, 117 F.3d 495, 499 (11th Cir. 1997) ("We review de novo the district court's . . . interpretation and application of the statutory provisions."); Powers v. United States, 996 F.2d 1121, 1123 (11th Cir. 1993) ("We review de novo a district court's interpretation and application of a statute."). Thus, we likewise conclude that the district court's interpretation of section 1997e(a)'s exhaustion requirements and application of section 1997e(a) to Alexander's claims are subject to de novo review.

### III.  Discussion

### A.  Section 1997e(a) of the PLRA

Section 1997e(a) of the PLRA mandates that "no action shall be brought" by a prisoner under any federal law until the prisoner has exhausted all "administrative remedies as are available," as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

5

Id. The PLRA's exhaustion requirement applies because Alexander's Bivens complaint was filed after the April 26, 1996 effective date of the PLRA.

Congress enacted this mandatory exhaustion requirement in section 1997e(a) as part of the PLRA's effort to curtail frivolous and abusive prisoner litigation. See, e.g., Rivera v. Allin, 144 F.3d 719, 727-28 (11th Cir. 1998). As this Court observed in Rivera, "Congress did not enact the PLRA in a vacuum. It held hearings and rendered findings, concluding that prisoners file more frivolous lawsuits than any other class of persons." Id. at 728. Congress found that the number of prisoner lawsuits "has grown astronomically–from 6,600 in 1975 to more than 39,000 in 1994." 141 Cong. Rec. S14408-01, *S14413 (daily ed. Sept. 27, 1995). Indeed, by 1995 more than twenty-five percent of the suits filed in federal district court were brought by prisoners. Roller v. Gunn, 107 F.3d 227, 230 (4th Cir. 1997) (citing Administrative Office of the United States Courts, 1995 Federal Court Management Statistics 167). Congress intended section 1997e(a) to "curtail the ability of prisoners to bring frivolous and malicious lawsuits by forcing prisoners to exhaust all administrative remedies before bringing suit in Federal court." 141 Cong. Rec. H1472-06, *H1480 (daily ed. Feb. 9, 1995).

**B. Section 1997e(a) Applies to Federal Prisoners**

Alexander's first contention that section 1997e(a) applies only to state prisoners lacks merit. The pre-PLRA statute did apply only to state prisoners because it addressed only section 1983 actions involving state action. 42 U.S.C. § 1997e(a)(1) (1994) (amended 1996).[5]

---

[5] Section 1983 creates a civil cause of action for any person deprived of any rights, privileges, or immunities, secured by the Constitution and laws, by another person acting under color of state law. 42 U.S.C. § 1983. See also text of pre-PLRA section 1997e(a)(1) at footnote 4.

McCarthy v. Madigan, 503 U.S. 140, 150, 112 S. Ct. 1081, 1089, 117 L. Ed. 2d 291 (1992).[6]

However, the text of the current section 1997e(a) expressly provides that its exhaustion requirement applies to actions brought "under section 1983 . . . or any other Federal law." Thus, section 1997e(a) by its own terms clearly applies to Alexander's Bivens action.

The Tenth Circuit reached this same conclusion in Garrett v. Hawk, 127 F.3d 1263, 1265 (10th Cir. 1997), where a federal prisoner brought a Bivens action alleging deliberate indifference to his medical needs and use of excessive force. Garrett held that "[b]ecause § 1997e pertains to 'any action brought . . . under . . . any [ ] Federal law, by a prisoner confined in any jail, prison or other correctional facility,' the exhaustion requirements now apply to Bivens suits brought by federal prisoners against federal officials as well." Id. (citation omitted).[7]

---

[6] McCarthy explained the limited nature of the pre-PLRA statute, as follows:

> Section 1997e imposes a limited exhaustion requirement for a claim brought by a state prisoner under Rev. Stat. § 1979, 42 U.S.C. § 1983, provided that the underlying state prison administrative remedy meets specified standards. . . . Section 1997e has no direct application in this case, because at issue here is a Bivens claim by a federal prisoner against federal prison officials.

503 U.S. at 150; 112 S. Ct. at 1089.

[7] Notably, Garrett also observed that McCarthy's conclusion that the pre-PLRA statute did not require federal prisoners to exhaust administrative remedies was based on the limited nature of the pre-PLRA statute, which required exhaustion in only section 1983 cases. Id. at 1264-65. Garrett explained that by adding the clause "or any other Federal law" in section 1997e(a) Congress expanded the types of cases to which the exhaustion requirement would apply beyond section 1983 cases. Id. at 1265. Garrett also noted that the language of 1997e(a) is mandatory–"[n]o action shall be brought . . ."–in contrast to the pre-PLRA statute's language, which was discretionary–"if the court believes that such a requirement would be appropriate and in the interests of justice." Id. Therefore, Garrett concluded McCarthy does not apply to the current section 1997e(a). Id.

7

In addition, legislative history makes clear that Congress intended PLRA section 1997e(a) to apply to both state and federal prisoners.  See Garrett, 127 F.3d at 1265.  Remarks during the floor debate on the PLRA criticized the McCarthy decision and mentioned that since that decision restricting exhaustion to state prisoners "a total of 1,365 new Bivens cases [have been] filed in Federal court tying up the time of Federal judges and lawyers for the Bureau of Prisons at a time when we already have overcrowded dockets."  141 Cong. Rec. H14078-02, *H14105 (daily ed. Dec. 6, 1995).[8]  Further remarks were made to the effect that "[t]he new administrative exhaustion language in H.R. 2076 [the PLRA] will require that all cases brought by Federal inmates contesting any aspect of their incarceration be submitted to administrative remedy process before proceeding to court."  Id.  See also Garrett, 127 F.3d at 1265. In short, PLRA section 1997e(a) now applies to both federal and state prisoners.

## C.  Futility and Inadequacy Doctrines

Alexander's next contention is that the BOP's administrative remedies are futile and inadequate in his case because the BOP has no authority to award him monetary damages or to declare the Ensign Amendment unconstitutional.  As a result, Alexander asserts that there were no administrative remedies "available" to him and that the mandatory exhaustion requirement of section 1997e(a) does not apply to his type of claims.  We disagree for several reasons.

First, Alexander's complaint sought an injunction not only against the Ensign Amendment, but also against the BOP's interpretation and implementation of that statute through its regulations and Program Statement.  Even prior to the PLRA, this Court held that prisoners

---

[8]As explained in Garrett, because Congress enacted PLRA as a rider to an appropriations bill, "floor debate is more indicative of legislative intent than it otherwise would be, especially where the floor statements in favor of the bill remain uncontested."  127 F.3d at 1265 n.2.

seeking monetary damages and injunctive relief should exhaust administrative grievance procedures that were arguably futile and inadequate before filing a section 1983 action regarding prison conditions. Irwin v. Hawk, 40 F.3d 347, 348-49 (11th Cir. 1994). The Irwin Court acknowledged McCarthy's holding "that a federal prisoner who initiates a Bivens claim solely for money damages need not exhaust the grievance procedure before seeking judicial review of his claim. 503 U.S. at ----, 112 S.Ct. at 1088." Irwin, 40 F.3d at 348 (emphasis supplied). This Court in Irwin then noted that "[t]he Court in McCarthy, however, explicitly reserved ruling on whether an exhaustion of remedies requirement is appropriate in a case such as Irwin's, where the inmate seeks both monetary and injunctive relief." Id.[9] This Court in Irwin then agreed with the Seventh Circuit's conclusion that exhaustion should be required even if it appears futile, as follows:

> No doubt denial is the likeliest outcome but that is not sufficient reason for waiving the requirement of exhaustion. Lightening may strike: and even if it doesn't, in denying relief the Bureau may give a statement of its reasons that is helpful to the district court in considering the merits of the claim. Green v. Meese, 875 F.2d 639, 641 (7th Cir. 1989).

Irwin, 40 F.3d at 349. In reaching its conclusion, the Irwin Court relied on a previous decision, Caraballo-Sandoval v. Honsted, 35 F.3d 521, 524 (11th Cir. 1994), which also held that the district court properly dismissed the prisoner's claim for failure to exhaust administrative

---

[9] In Irwin, this Court quoted the Supreme Court's footnote in McCarthy to this effect, as follows:

> Petitioner concedes that if his complaint contained a prayer for injunctive relief, exhaustion principles would apply differently. Were injunctive relief sought, the grievance procedure probably would be capable of producing the type of corrective action desired.

Id.

9

remedies where the prisoner sought both monetary and injunctive relief.  See Irwin, 40 F.3d at 348-49.

Second, the judicially recognized futility and inadequacy exceptions do not survive the new mandatory exhaustion requirement of the PLRA.  Exhaustion of administrative remedies may be either mandated by statute or imposed as a matter of judicial discretion.  Congress now has mandated exhaustion in section 1997e(a) and there is no longer discretion to waive the exhaustion requirement.  The Supreme Court has made clear that "[w]here Congress specifically mandates, exhaustion is required."  McCarthy v. Madigan, 503 U.S. 140, 144, 112 S. Ct. 1081, 1086, 117 L. Ed. 2d 291 (1992).[10]  Since exhaustion is now a pre-condition to suit, the courts cannot simply waive those requirements where they determine they are futile or inadequate. Such an interpretation would impose an enormous loophole in the PLRA, which Congress clearly did not intend.   Mandatory exhaustion is not satisfied by a judicial conclusion that the requirement need not apply.  Weinberger v. Salfi, 422 U.S. 749, 766, 95 S. Ct. 2457, 2467, 45 L. Ed. 2d 522 (1975) (holding that where exhaustion is a statutorily specified jurisdictional prerequisite, "the requirement . . . may not be dispensed with merely by a judicial conclusion of futility").

Alexander emphasizes that even though exhaustion is now mandatory, the PLRA still mandates exhaustion only when there is an "available" remedy.  Since the BOP cannot award

---

[10] In McCarthy, the Supreme Court noted that where Congress specifically mandates, a plaintiff must exhaust the administrative remedies available to him before he may file in federal court, but held that there was no specific mandate in the pre-PLRA section 1997e(a) context. 503 U.S. at 144; 112 S. Ct. at 1086.  See also McNeil v. United States, 508 U.S. 106, 111, 113 S. Ct. 1980, 1983, 124 L. Ed. 2d 21 (1993) (in a claim by a prisoner under the Federal Torts Claims Act, holding that the language that an "action shall not be instituted" until a final agency judgment mandated exhaustion before the filing of a case).

money damages or declare the Ensign Amendment unconstitutional, Alexander argues that there is no adequate remedy and thus no "available" remedy. However, the term "administrative remedies as are available" does not mean an adequate administrative remedy for several reasons.

First, the pre-PLRA statute required "exhaustion of such plain, speedy, and effective administrative remedies as are available," 42 U.S.C. § 1997(e)(a)(1) (1994) (amended 1996) (emphasis supplied). Indeed, in McCarthy, the Supreme Court explicitly relied on this statute's requirement of "effective administrative remedies" in concluding that a prisoner seeking money damages, which could not be awarded by the BOP's Administrative Remedy Program ("ARP"), would not have an adequate administrative remedy available and therefore would not be required to exhaust administrative remedies. 503 U.S. at 150; 112 S. Ct. at 1089. In stark contrast, the current PLRA section 1997e(a) does not condition the exhaustion requirement on the administrative remedies being "plain, speedy, and effective." Instead, section 1997e(a) merely provides for exhaustion of "such administrative remedies as are available." 42 U.S.C. § 1997e(a) (1996). The removal of the qualifiers "plain, speedy, and effective" from the PLRA's mandatory exhaustion requirement indicates that Congress no longer wanted courts to examine the effectiveness of administrative remedies but rather to focus solely on whether an administrative remedy program is "available" in the prison involved.

Secondly, Alexander's proffered construction of "remedies as are available" would require courts to evaluate each cause of action and each type of relief sought in each prisoner's complaint and determine whether the BOP can grant any adequate relief. This is not what the PLRA provides or what Congress intended.[11] We find that the term "available" in section

---

[11] Congress amended section 1997e(a) largely in response to concerns about the heavy volume of frivolous prison litigation in the federal courts. See, e.g., 141 Cong. Rec. H14078-02,

1997e(a) is used to acknowledge that not all prisons actually have administrative remedy programs. Some state penal institutions may not have an administrative remedy program to address prison conditions, and thus there are no "available" administrative remedies to exhaust. Section 1997e(a) permits these prisoners to pursue their claims directly in federal court. However, here, the BOP has an available administrative remedy program.

Finally, Alexander cites several post-PLRA decisions that did not require a prisoner to pursue a remedy under the BOP's ARP or a state's prison grievance program because those courts determined that there was no adequate remedy. Garrett v. Hawk, 127 F.3d 1263 (10th Cir. 1997) (Bivens claim by federal inmate); Jackson v. DeTella, 998 F. Supp. 901, 904 (N.D. Ill. 1998) (claim by a state inmate); Sanders v. Elyea, 1998 U.S. Dist. LEXIS 1705 at *16 (N.D. Ill. 1998)(same), and Lacey v. C.S.P. Solano Medical Staff, 990 F. Supp. 1199, 1205 (E.D. Cal. 1997)(same). These decisions do not persuade us to accept Alexander's position. None of these cases discusses Congress's removal of the pre-PLRA condition that available remedies be "plain, speedy, and effective" from section 1997e(a). Also, only Garrett examines the legislative history of the PLRA, but even Garrett overlooks the guidance the legislative history of the PLRA offers for determining Congress's intent in amending section 1997e(a) to require exhaustion of

---

*H14105 (daily ed. Dec. 6, 1995). Congress desired "to wrest control of our prisons from the lawyers and the inmates and return that control to competent administrators appointed to look out for society's interests as well as the legitimate needs of prisoners." 141 Cong. Rec. S14408-01, *S14418 (daily ed. Sept. 27, 1995). Prisoners' complaints about prison conditions are often filed pro se and generally contain a lengthy layman's recitation of complaints about the prison without articulating clearly the legal causes of action in issue and necessitating significant expenditure of judicial resources to review and refine the nature of the legal claims in a prisoner's complaint. With these considerations in mind, Congress mandated that prisoners exhaust administrative remedies and eliminated courts' conducting case-by-case inquiries until after a prisoner has presented his claims to a particular administrative remedy program, which often helps focus and clarify the issues for the court.

"such administrative remedies as are available." In any event, <u>Garrett</u>, <u>Jackson</u>, and <u>Lacey</u> involved claims for only monetary relief, and <u>Sanders</u> does not specify the type of relief sought. In contrast, Alexander seeks both monetary and injunctive relief. Since both the plain language and the legislative history of the PLRA support the result here, we decline to follow these decisions.

Requiring mandatory exhaustion if a prison has an available administrative grievance procedure is consistent with this Court's longstanding recognition of the usefulness of exhaustion requirements. In <u>Kobleur v. Group Hospitalization & Medical Services, Inc.</u>, 954 F.2d 705 (11th Cir. 1992), this Court set out these seven policies favoring exhaustion:

> (1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene ; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that "frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures."

<u>Id</u>. at 712 (citations omitted). Each policy is served by requiring Alexander to exhaust remedies where the BOP has an available administrative remedy procedure.

For example, the BOP frequently interprets and implements a general statute through more specific regulations and program statements. In this case, the Ensign Amendment does not define the term "sexually explicit," and the BOP adopted regulations and a Program Statement defining that term and applying it to various publications. During the administrative grievance process, the BOP could review its interpretation and correct any mistakes it might find before the federal judiciary became involved. Even if the BOP decided not to revise its interpretation and

13

plan for implementing the Ensign Amendment, the BOP at least would be able to explain why it believed its interpretation properly construed the Ensign Amendment and satisfied constitutional standards.

Secondly, even if the complaining prisoner seeks only money damages, the prisoner may be successful in having the BOP halt the infringing practice, which at least freezes the time frame for the prisoner's damages.

Thirdly, in constitutional challenges, the BOP could create a record explaining its legitimate penological justifications for the new restrictions and for the BOP's implementing regulations. Even if the BOP did not grant relief, a prisoner's resort to the administrative process is not futile, but allows grievances to be heard and a record to be created for review in any subsequent proceedings.[12] Courts not only conserve time and effort as a result of any fact-finding during the ARP proceedings, but also benefit from the BOP's expertise in interpreting its own regulations and applying them to the facts before it.

---

[12] Indeed, the need for a more fully developed record is mainly what divided the court in Amatel v. Reno, ---F.3d--- , (D.C. Cir. Sept. 15, 1998), a recent decision in which a divided court in the District of Columbia Circuit upheld the Ensign Amendment and regulations implementing it. For example, the panel did not agree about how broadly the prohibition of materials would extend under the BOP's Program Statement. The majority relies on the list of permitted publications, including National Geographic and Victoria's Secret Catalog, to argue that the BOP would be unlikely to exclude "fringe" materials which arguably "feature nudity" within the definitions set out in the BOP regulations but which are considered to have social, literary, or artistic value. Id. at *10. However, the dissent takes the position that the ban imposed by the regulations is so broad prison wardens may not have discretion to distribute works that "speak[] intelligently to mankind," such as Michelangelo's David, to inmates. Id. at *20. The dissent also expresses concern that the record on the penological justifications for the Ensign Amendment and regulations implementing it was "too Spartan" and therefore declines to go along with the majority in finding a link between the restrictions on magazines and the rehabilitation of inmates. Id. at *16-*18 (Wald, J., dissenting).

In summary, we conclude that section 1997e(a) requires Alexander to submit his claims for monetary and injunctive relief to the BOP's available prison grievance program, even if the relief offered by that program does not appear to be "plain, speedy, and effective," before filing those claims in federal court. The judicially created futility and inadequacy doctrines do not survive the PLRA's mandatory exhaustion requirement.

## IV. Conclusion

For all of the foregoing reasons, the district court's dismissal of Alexander's complaint for failure to exhaust administrative remedies as required by section 1997e(a) of the PLRA is AFFIRMED.