[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 8, 2008
THOMAS K. KAHN
CLERK

No. 07-14206
Non-Argument Calendar
_____

D. C. Docket No. 04-00019-CV-3

JEFFERY L. MASON,

Plaintiff-Appellant,

versus

FNU BRIDGER,
et al.,

Defendants,

FNU SMITH,
FNU BROWN,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(January 8, 2008)**

Before BIRCH, DUBINA and CARNES, Circuit Judges.

PER CURIAM:

Jeffery Mason, an inmate at Telfair State Prison in Georgia, filed a civil rights lawsuit under 42 U.S.C. § 1983 alleging that prison officials beat him during a fight that erupted between another inmate and a corrections officer on April 5, 2003.  Mason appeals the district court's order granting the defendants' motion for summary judgment based on Mason's failure to exhaust available administrative remedies as required by the Prison Litigation Reform Act.  See 42 U.S.C. § 1997e(a).

According to Mason's complaint, he was watching television in the prison's day room on April 5, 2003 when a fight started between another prisoner and a corrections officer.  During the ensuing confusion, Mason alleges that he was tackled and beaten so badly that he suffered a dislocated shoulder among other injuries.  According to Mason, he was subsequently placed in lock-down isolation until April 11, 2003.

Following the April 5, 2003 incident, Mason filed two grievances relevant to this appeal.  On April 11, 2003, Mason filed his first grievance, alleging that he was subjected to excessive force during the April 5, 2003 incident.  Because the grievance was filed more than five days after the incident and Mason had not

2

requested permission to file an out-of-time grievance, the grievance was denied and Mason did not appeal. On May 7, 2003, Mason filed another grievance complaining about the same incident. Again, Mason did not request permission to file an untimely grievance. The grievance was denied and Mason did not appeal.

Mason subsequently filed a lawsuit in the Southern District of Georgia under § 1983, and the defendants moved for summary judgment based on Mason's failure to exhaust available administrative remedies. The district court granted the defendants' motion.

Mason argues on appeal that he fully complied with the PLRA's exhaustion requirement. According to Mason, his grievances were timely because he was in lock-down isolation prior to April 11, 2003 and therefore unable to get a grievance form. Thus, Mason contends that when he filed his grievance on that date, it was the first time that a grievance process was "available" to him. Mason further argues that he complied with an "exception" to the standard grievance procedure, which applies to complaints alleging physical abuse or excessive force, by filing his April 11, 2003 grievance. Because that grievance was forwarded to Internal Affairs and subsequently denied, Mason argues that the administrative process was complete and he was not required to file an appeal.

Finally, Mason contends that the district court's order granting summary

judgment in favor of the defendants constitutes a denial of his and other similarly situated Georgia prisoners' constitutional right of access to the courts and violates the guarantees of the Equal Protection Clause.[1]

## I.

We review de novo the district court's dismissal of a lawsuit for failure to exhaust available administrative remedies under § 1997e(a) of the PLRA. See Alexander v. Hawk, 159 F.3d 1321, 1323 (11th Cir. 1998). In determining whether summary judgment is appropriate, we consider the evidence "in the light most favorable to the nonmoving party," and draw all reasonable inferences in favor of that party. Maniccia v. Brown, 171 F.3d 1364, 1367 (11th Cir. 1999) (citation omitted). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Section 1997e(a) provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a

---

[1] In his reply brief to this Court, Mason also argues that the procedure adopted by the district court for resolving exhaustion issues under the PLRA permits impermissible judicial fact-finding. Because exhaustion is an affirmative defense, Mason contends that it is not clear that factual disputes concerning exhaustion should be decided by the court. Because Mason failed to raise this issue in his initial brief, however, it is deemed waived. See United States v. Curtis, 380 F.3d 1308, 1310 (11th Cir. 2004) (discussing the "long-standing rule in this circuit, as well as in the federal rules themselves, that issues not raised by a defendant in his initial brief on appeal are deemed waived").

prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 992 (2002). Exhaustion is a precondition to litigation in federal courts, and courts do not have the discretion to waive the § 1997e(a) requirement. Booth v. Churner, 532 U.S. 731, 741, 121 S. Ct. 1819, 1824 (2001); Alexander, 159 F.3d at 1325–26; see also Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000) (concluding that "when a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1981 lawsuit").

The Supreme Court has held that "the PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, __ U.S. __, 126 S. Ct. 2378, 2382 (2006). In Woodford, the Supreme Court clarified that proper exhaustion requires "that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." Id. at 2382; see also Johnson v. Meadows, 418

5

F.3d 1152, 1159 (11th Cir. 2005) (holding that § 1997e(a)'s exhaustion requirement contains "a procedural default component"—that is, "[p]risoners must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a federal claim"); Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999) (per curiam) (holding that a prisoner did not exhaust available administrative remedies where he filed an untimely grievance without seeking leave, and failed to appeal the denial of his grievance).  Thus, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Woodford, 126 S. Ct. at 2386.

## II.

Pursuant to the standard operating procedures of the Georgia Department of Corrections in effect at the time of the April 5, 2003 incident, inmates were required to file a grievance form "within five (5) calendar days from the date the inmate discovered, or reasonably should have discovered, the incident giving rise to the complaint and was able to file the grievance."  However, the grievance coordinator had the authority to waive this time limit "in appropriate cases for good cause shown."  Following the submission of a grievance form, the warden

6

rendered an official response. Once the inmate received the warden's response, he had "four (4) calendar days in which to decide whether" he wished to appeal to the office of the commissioner.

As an initial matter, it is clear that Mason failed to "timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a claim" in the district court, Johnson, 418 F.3d at 1159, as required by § 1997e(a). Although Mason contends now, as he did in objecting to the defendants' motion for summary judgment, that he was in lock-down isolation until six days after the April 5, 2003 incident, the standard operating procedures permitted out-of-time grievances but only if the prisoner requested to file out of time and made the requisite showing of good cause. The undisputed facts show that Mason never followed that procedure by requesting permission to file his untimely grievances. See Johnson, 418 F.3d at 1159; Harper, 179 F.3d at 1312.

Even if we were to assume that Mason filed his grievances as soon as the remedies became available to him, his failure to appeal the denials of those grievances is also fatal to consideration of his claims on the merits. See Woodford, 126 S. Ct. at 2387; Harper, 179 F.3d at 1312. The undisputed facts show that as of September 15, 2006, Mason had never appealed the denial of

7

either of his grievances.[2]

Mason, therefore, failed to properly exhaust all of his available administrative remedies as he was required to do by § 1997e(a) of the PLRA. Not only did he file untimely grievances without alleging good cause for doing so, he also failed to appeal the denials of those grievances. Accordingly, we conclude that the district court properly determined that there was no genuine issue of material fact concerning Mason's failure to satisfy the PLRA's exhaustion requirement. [3]

### III.

Mason's final argument is that the district court's dismissal of his claims closed the courthouse doors to Georgia prisoners generally and violated the Equal

---

[2] Mason's sole argument for excusing his failure to file a timely appeal of the denial of his untimely grievances is that his situation falls within a "special exception" to the standard grievance process. But that special exception is contained in the current version of the Inmate Grievance Processing Manual, not in the one that was in effect in 2003 when Mason filed his grievances and failed to appeal their denial. We decide the case based on the procedures in place at the time of the default.

[3] Mason also contends that the district court's order ignores the fact that his complaint was, in his words, "brought under § 1983 for gross civil rights violations of excessive force protected by the Eighth Amendment as well as the laws and treaties of the United States defining torture." He contends that the alleged beatings to which he was subjected qualify as "torture" under 18 U.S.C. § 2340 and the United Nations Convention against Torture and Other Cruel, Inhumane or Degrading Treatment or Punishment. As we noted earlier, however, the PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532, 122 S. Ct. at 992. Mason's failure to satisfy the exhaustion requirement was, therefore, also fatal to his claims concerning 18 U.S.C. § 2340 and the Convention Against Torture.

Protection Clause. His argument apparently is that this enforcement of the PLRA's exhaustion requirement violates the constitutional rights of prisoners who allege that they have been assaulted by prison officials. It doesn't.

"It is now established beyond a doubt that prisoners have a constitutional right of access to the courts," and that the right must be "adequate, effective and meaningful." Bounds v. Smith, 430 U.S. 817, 821–22, 97 S. Ct. 1491, 1494–95 (1977). Requiring that reasonable procedures be followed is not tantamount to barring claims from being presented, as is evident from the fact that the Supreme Court has enforced the PLRA's exhaustion requirement. See Woodford, 126 S. Ct. at 2387; Porter, 534 U.S. at 532, 122 S. Ct. at 992.

The relevant grievance procedure in this case was a simple two-step procedure. The first step consists of either the submission of a grievance form within five days of the incident complained of, or a showing of good cause for failure to timely comply with that deadline. The second step consists of the filing of an appeal within four days of the warden's unfavorable ruling. Mason failed to comply with either of these requirements. By failing to do so, he closed the courthouse door himself.

Nor did the district court's dismissal of Mason's lawsuit for failure to exhaust administrative remedies violate the Equal Protection Clause. "[I]f a law

neither burdens a fundamental right nor targets a suspect class," it does not violate the Equal Protection Clause "so long as it bears a rational relation to some legitimate end." Romer v. Evans, 517 U.S. 620, 631, 116 S. Ct. 1620, 1627 (1996). Prisoners are not a suspect class. Jackson v. State Bd. of Pardons & Paroles, 331 F.3d 790, 797 (11th Cir. 2003).

And the exhaustion requirement clearly satisfies rational basis review. "Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits." Porter, 534 U.S. at 524, 122 S. Ct. at 988. It rationally serves this legitimate end by affording prison officials "time and opportunity to address complaints internally before allowing the initiation of a federal case." Id. at 525, 122 S. Ct. at 988. "In some instances, corrective action . . . might . . . satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." Id. We, therefore, conclude that § 1997e(a) is rationally related to a legitimate end. Accordingly, the district court properly granted the defendants' motion for summary judgment.

**AFFIRMED.**