[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-13009
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 17, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00155-CV-CDL-4

ARTHUR GOULD,

Plaintiff-Appellant,

versus

BRIAN OWENS,
Commissioner,
L. GALE BUCKNER,
Parole Board Chair,
H. DWIGHT HAMRICK,
Warden, Rutledge State Prison,
DEBRA SLAUGHTER,
RON DEVALINGER,
Counselor, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(June 17, 2010)

Before CARNES, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Arthur Gould, an inmate in Georgia's state prison system, sued a number of prison officials under 42 U.S.C. § 1983 for violating his rights under the U.S. Constitution.[1]  On the defendants' motion, the district court dismissed the complaint on the grounds that Gould had failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), and that he had otherwise failed to state any viable claims for relief, *see* 28 U.S.C. § 1915A(b)(1); Fed. R. Civ. P. 12(b)(6).  Gould now argues that his action was improperly transferred to another venue, that the district judge failed to engage in a plenary review of the magistrate judge's report and recommendation, that the court should have allowed him to amend his complaint, and that the court erred by granting the defendants' motion to dismiss.

---

[1] The defendants named in Gould's Amended and Supplemental Complaints were James Donald, Commissioner of the Georgia Department of Corrections; Gale Buckner, Chair of the State Board of Pardons and Paroles; Warden Dwight Hamrick; Superintendent Debra Slaughter; Lieutenant Charles Fleming; Counselor Ron DeValinger; "Mental Health Director" Pat Williams; and Deputy Wardens Brown Keys and Jeffery Jefferson.  On appeal, Brian Owens was automatically substituted for James Donald as Commissioner in his official capacity.  *See* Fed. R. App. P. 43(c)(2).  Although Gould maintains that he sued all of the defendants in their individual capacities, any substitution error was harmless because Gould did not object to the magistrate judge's recommendation that his claims against Donald be dismissed.

I

The events giving rise to Gould's complaint began when he was an inmate at Rutledge State Prison.[2]  During the course of a work-release program at a transitional facility, Gould saw another inmate "rob" a nearby business.  But when he reported the crime to defendants DeValinger, Fleming, and Slaughter, they warned him to "leave it alone" because the business owner was not white and because they did not want the transitional facility to "look bad."  DeValinger and Fleming later repeated that warning, and DeValinger threatened to have his friends on the Parole Board make life "hard" for Gould.

Gould successfully completed the work-release program, but the Parole Board—despite its previous tentative decision to parole him if he completed the program—denied his request for parole.  Gould learned of the Board's decision from Fleming and several other officials after being detained without explanation in a holding cell for over four hours.  Gould was then taken back to Rutledge State Prison, where officials refused to return his shoes and other personal property.  When he asked defendants Hamrick, Keys, and Williams why he had been sent

_____

[2] For our purposes here, we assume that Gould's allegations are true.  *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990) ("The allegations in the complaint must be taken as true for purposes of the motion to dismiss.").  Because Gould is a *pro se* litigant, we also construe his filings before us and in the district court liberally.  *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008); *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

back to prison, they refused to tell him, and he was placed—again without explanation—first in solitary confinement and then in the ward reserved for mentally ill prisoners. His request for a hearing[3] was denied.

According to Gould, violence and sexual assault were commonplace on the mental-health ward because prison officials refused to protect the mentally ill inmates from each other. Moreover, officials on the ward would routinely threaten to give the inmates incapacitating "shots" that would leave them vulnerable to attack. In particular, the officials threatened Gould with these shots after he refused to abandon the claims in this lawsuit.

In his complaint,[4] Gould alleged the defendants had sent him to the mental-health ward in retaliation for reporting the crime at the transitional facility. He also complained that the defendants had interfered with his ability to prosecute his claims in federal court, refused to return his personal property, and discriminated against him because he was black, a Roman Catholic, and mentally disabled.

---

[3] *See Vitek v. Jones*, 445 U.S. 480, 494 (1980) ("[T]he stigmatizing consequences of a transfer to a mental hospital for involuntary psychiatric treatment, coupled with the subjection of the prisoner to mandatory behavior modification as a treatment for mental illness, constitute the kind of deprivations of liberty that requires procedural protections.").

[4] Gould's original complaint came in the form of a letter addressed to the chief district judge for the Northern District of Georgia. After the action was transferred to the Middle District of Georgia, Gould filed a formal amended complaint and a "supplemental" complaint. We refer to these two documents, collectively, as his "complaint."

Finally, Gould identified a host of procedural errors in the course of his parole determination and in the defendants' refusal to conduct a hearing to justify his assignment to the mental-health ward. In light of his injuries, Gould requested injunctive relief and $4 million in damages.

The defendants filed a motion to dismiss, which the parties briefed extensively. The defendants argued that Gould had failed to exhaust his administrative remedies and failed to state a claim for relief. Gould responded that § 1983 had no exhaustion requirement and argued that prison officials had hindered his efforts to pursue any meaningful administrative remedies.

Before the magistrate judge to whom the case had been referred ruled on the motion to dismiss, Gould filed two "Emergency Letters" with the court. In his letters, Gould alleged that several Rutledge State Prison officials—none of whom was then a defendant—had beaten him, sexually assaulted him with a police baton, and goaded him into cutting his arm with a razor. After letting him bleed "for a while," the officials took him to have his arm treated, but they refused to allow medical personnel to inspect the wounds caused by the sexual assault. Gould was then transferred to Valdosta State Prison, where he received more complete medical attention ten days later. Gould also accused the officials of hurling racial epithets while forcing him to stand outside in the cold. After filing the emergency

5

letters, Gould moved for leave to amend his complaint so that he could bring new claims for torture and retaliation against the officials involved in this incident.

The magistrate judge issued a report and recommendation granting the defendants' motion to dismiss and denying Gould's "futile" motion to amend.[5] After finding that Gould had failed to exhaust his administrative remedies, the magistrate concluded that he had also failed to state a valid claim for relief. The district court adopted the magistrate's recommendation over Gould's objection and dismissed the complaint. Gould appeals.

II

Gould's first argument on appeal is that the district court committed a series of procedural errors before dismissing his complaint. For instance, he argues that his action should not have been transferred to the Middle District of Georgia because the crime he witnessed at the transitional facility occurred in the Northern District of Georgia. But Gould waived this argument by failing to bring it to the district court's attention, and we will not consider it for the first time here. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) ("[I]ssues not raised below are normally deemed waived.").

---

[5] Gould had a series of other motions pending that the magistrate recommended denying as moot.

Gould also argues that the district court could not have adequately reviewed his objections to the magistrate judge's report and recommendation because neither the magistrate nor the district judge conducted a hearing. But this action was dismissed on the pleadings, and Gould was not entitled to an evidentiary (or any other) hearing before the court ruled on the defendants' motion. We will not presume the district judge failed to engage in the plenary review expected of him[6] simply because Gould did not receive an opportunity to present *factual* evidence in opposition to a motion testing the *legal* sufficiency of his claims.

Finally, Gould argues that the court erred by denying him leave to amend his complaint. "We review the district court's refusal to grant leave to amend for abuse of discretion, although we exercise *de novo* review as to the underlying legal conclusion that an amendment to the complaint would be futile." *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1336 (11th Cir. 2010).

Gould argues that the new allegations in his "Emergency Letters" were a natural extension of his original claims because the abuse he described represented prison officials' attempts to carry out their earlier threats against him for pursuing this lawsuit. Although Gould could no longer amend his complaint as of right, the district court had an obligation to give him leave to amend if justice so required.

---

[6] *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

7

Fed. R. Civ. P. 15(a)(2). In other circumstances, justice might well have required the court to give him such leave. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). But a district court may deny leave to amend on the ground of futility if the complaint as amended would still be subject to dismissal. *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262–63 (11th Cir. 2004).

Here, Gould's new allegations of abuse related to "prison conditions," and the Prison Litigation Reform Act (PLRA) required him to exhaust his administrative remedies before filing suit. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). Because Gould never made any attempt to pursue the remedies for this incident available to him in the prison system, the district court correctly concluded that amending his complaint to include these new allegations would have been futile. On these facts, denying Gould's motion for leave to amend was not an abuse of discretion.

III

Gould devotes most of his energy on appeal to challenging the dismissal of his complaint. Construed liberally, Gould's complaint purported to state constitutional claims under the First Amendment, the Eighth Amendment, and the Fourteenth Amendment's Due Process and Equal Protection Clauses. We review the dismissal of these claims *de novo*. *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990). The question is whether the complaint "contain[ed] sufficient factual matter, accepted as true, to 'state a claim to relief that [was] plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

It is undisputed that Gould did not exhaust the administrative remedies available through the prison system's grievance procedures.[7] Ordinarily, this failure would require the dismissal of his claims; under the PLRA, prisoners cannot challenge "prison conditions" in court "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). But Gould argues that he did not have to resort to the prison system's grievance procedures and that, in any event, no meaningful administrative remedies were available.

---

[7] Although Gould filed several informal grievances, he never followed up with the formal grievance forms required by prison rules.

9

With respect to the first argument, Gould is mistaken. Although "[p]risoner suits alleging constitutional deprivations while incarcerated once fell within [the] general rule" that "plaintiffs pursuing civil rights claims under 42 U.S.C. § 1983 need not exhaust administrative remedies," *Porter*, 534 U.S. at 523, Congress changed that rule in 1980 and further "invigorated the exhaustion prescription" with the PLRA in 1995, *id.* 523–24. Today it is clear that Eighth Amendment claims regarding abusive treatment fall squarely within the ambit of the PLRA's exhaustion requirement. *Id.* at 532. Likewise, the manner in which prison officials withheld Gould's property, developed the record for his parole hearing, and hindered his efforts to participate in this litigation—the crux of his claims under the Due Process Clause—undeniably relates to prison conditions. And to the extent Gould's claims for retaliation might be cognizable under the First Amendment, he still had the obligation to pursue administrative remedies before filing this action. *See Alexander v. Hawk*, 159 F.3d 1321 (11th Cir. 1998) (applying the exhaustion requirement to a First Amendment claim). The same must be said of his discrimination claims under the Equal Protection Clause. *See Jones v. Bock*, 549 U.S. 199, 210–11 (2007) (applying the exhaustion requirement to a race-discrimination claim).

Gould's only argument against his obligation to exhaust administrative remedies is the contention that he could not have filed grievances to challenge events related to the crime he witnessed or the decision to deny his parole. But Gould did not sue because he had witnessed a crime or was denied parole. On the contrary, he has alleged that the defendants retaliated against him for reporting a crime and that they failed to prepare certain documents for the Parole Board's consideration. These constitutional claims relate to conditions within the control of prison officials, and Gould had to pursue "such administrative remedies as [were] available." 42 U.S.C. § 1997e(a).

In apparent recognition of the fact that he had some duty to exhaust administrative remedies, Gould also argues that no administrative remedies were made meaningfully "available" to him through the prison grievance system. We disagree. The Georgia Department of Corrections allows inmates to file grievances challenging nearly "[a]ny condition, policy, procedure, action or lack thereof that affects inmates and is in the [Department's] control." (Def.'s Pre-Answer Mot. to Dismiss Ex. A Ex. 1, at 3.) And notwithstanding the limited exceptions to the general grievance policy, inmates may grieve *any* acts of "retaliation, misconduct or harassment . . . regardless of the form." (*Id.*)

To the extent Gould argues that the prison system's grievance procedures were inadequate or that their pursuit would have proven futile, the Supreme Court and this court have already rejected his argument. *See Porter*, 534 U.S. at 524 ("All 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'" (citation omitted)); *Booth v. Churner*, 532 U.S. 731, 741 (2001) ("Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures."); *Alexander*, 159 F.3d at 1326 ("Since exhaustion is now a pre-condition to suit, the courts cannot simply waive those requirements where they determine they are futile or inadequate."). And Gould waived any argument that the prison system's grievance procedures were unconstitutional by raising the issue for the first time on appeal.

Before the district court, Gould also argued that prison officials had prevented him from exhausting his administrative remedies by denying him formal grievance forms. Assuming that Gould has not abandoned this contention on appeal,[8] we note the obvious: a prisoner denied access to administrative remedies has no available remedies to exhaust. But we are not inclined to disturb the

---

[8] Although Gould has not explicitly referred to this allegation on appeal, we construe his briefs liberally in light of his insistence that the prison system's administrative remedies were inadequate.

12

district court's factual findings on exhaustion here. *Cf. Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) ("If the complaint is not subject to dismissal . . . where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion."). The record shows Gould's use of the grievance procedures in other contexts, and we cannot say that the court's findings on this point were clearly erroneous. *Cf. Bryant v. Rich*, 530 F.3d 1368, 1378 (11th Cir. 2008) ("[W]e cannot say that the district court committed clear error in finding that Priester had access to grievance forms at GSP by which he could have reported the prison abuse at Rogers.").

IV

Regardless of the seriousness of his allegations, Gould had an obligation to exhaust the remedies that were available in the prison system before seeking redress in court. Because he failed to fulfill that obligation, the district court did not err by dismissing his complaint. Nor did it err by denying his motion to introduce new unexhausted claims to this litigation. In light of these conclusions, Gould's objections to the district court's disposal of the other motions before it are moot. The judgment below is

**AFFIRMED.**