[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10716
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-03234-AT


JONATHAN-MICHAEL TREVARI,

Plaintiff-Appellant,

versus

ROBERT A. DEYTON DETENTION CENTER,

Defendant,

WARDEN,
PRICE,
Staff Psychiatrist,
BOWEN,
Chaplain,
RALPH CHERRY,
former Warden,
ASSISTANT WARDEN, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(April 3, 2018)

Before WILLIAM PRYOR, MARTIN, and ANDERSON, Circuit Judges.

PER CURIAM:

Jonathan-Michael Trevari, a prisoner proceeding pro se, appeals the district court's dismissal of his claims against certain prison officials. On appeal, Trevari argues the district court improperly determined that he had failed to exhaust the available administrative remedies for his claims under the First Amendment and Equal Protection Clause, which alleged that he had been denied access to religious services, a kosher diet, and homosexual adult publications.

I.

At all times relevant to this case, Trevari was incarcerated at the Robert A. Deyton Detention Facility (the "Deyton Facility"), a privately owned prison in Lovejoy, Georgia. The Deyton Facility is operated by The GEO Group, Inc.

Trevari brought suit against twelve current and former GEO employees who worked at the Deyton Facility: warden Randy Tillman, former warden Ralph Cherry, assistant warden Danny Horton, security chief Herbert Walker, chaplain Donald Bowen, medical administrator Dr. Tracy Kinders, former medical

2

administrator Dr. McCardel, case manager Ralph Holmes, grievance coordinator Erick Hardy, classification manager C.E. Johnson, Prison Rape Elimination Act compliance manager Teressa Mims, and Wayne Woods, compliance assistant for that Act. He also brought claims against Dr. Bryan Price, an independent contractor who worked as a staff psychiatrist at the Deyton Facility.

Between his initial complaint and his later amendments, Trevari brought a total of twenty-three claims. After a frivolity review, the district court allowed Trevari to proceed on seven of those claims.[1]

His first two claims alleged that on April 10, 2015, Trevari informed Price that he was suffering abuse and sexual harassment from other prisoners. When Price failed to report the complaint to the proper channels, Trevari wrote to Cherry, Hardy, Horton, and Tillman, all of whom failed to adequately respond. Trevari similarly alleges that Mims and Woods failed to adequately respond to his claims of abuse and sexual harassment. Trevari generally alleged the defendants who didn't respond to his complaints failed to protect him from abuse.

Trevari's third claim alleged that Mims and Woods lied about his confinement status. Mims and Woods told Trevari in August 2015 that his solitary confinement was voluntary and he could leave whenever he felt comfortable doing

---

[1] None of those seven claims were brought against McCardel or Johnson as defendants, and therefore they have no part in this appeal.

so. However, Holmes—and later Horton—told Trevari his classification was not voluntary, and he remained in solitary confinement until at least November 2015. Trevari brought an administrative-confinement claim against Woods, Horton, and Mims.

Trevari's fourth claim was that he was denied access to a homosexual adult magazine. Holmes told Trevari the request was denied because the magazine contained nudity, but Tillman had told Trevari that other inmates were allowed to access Playboy and Hustler, which contain nudity. Trevari brought a claim under the First Amendment and the Equal Protection Clause against Holmes and Tillman.

Trevari's fifth claim alleged that he changed his religious beliefs in September 2015 and requested a kosher diet. Bowen, Tillman, and Kinder denied this request, allegedly for safety and health reasons. Trevari brought a First Amendment claim against Bowen, Tillman, and Kinder.

Trevari's sixth claim alleged that he was denied the right to attend church. Trevari wrote several complaints to a non-defendant official at the Deyton Facility, who told Trevari that Tillman and Walker would consider the issue. Trevari never got a response from Tillman or Walker, and brought a First Amendment claim against each of them.

Trevari's final claim alleged he was denied requested healthcare. Trevari asserted that he requested a prostate exam and spoke with Kinder about the issue,

4

but that his request has been ignored.  Trevari brought a claim against Kinder for failure to provide adequate medical care.

Defendants moved to dismiss all seven claims, and the magistrate judge issued a report and recommendation ("R&R") recommending that all be dismissed. First, the R&R acknowledged that while Trevari brought his claims under 42 U.S.C. § 1983, that statute covers only state actors, and relief against federal actors is instead available under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999 (1971).  Construing Trevari's pro se petition broadly, the magistrate allowed him to proceed under Bivens, but found Trevari's claims for failure to protect, administrative confinement, and denial of medical care all failed because alternative remedies exist under state law to address those claims.  As for the remaining claims arising under the First Amendment and Equal Protection Clause, the R&R recommended dismissal for lack of exhaustion because Trevari had not filed any internal appeals as part of the prison's grievance process.

Over Trevari's objections, the district court adopted the R&R and dismissed his claims.  On appeal, Trevari contends the district court erred in dismissing his claims for lack of exhaustion.  He argues he complied with the grievance procedures at the Deyton Facility, or deviated from those procedures only when they proved futile.

5

II.

As an initial matter, we affirm the district court's ruling with regard to the sixteen claims that were dismissed during the frivolity review for failure to state a claim.  Trevari made no mention of those claims in his appeal, and this Court generally will not consider any issues not raised in an appellant's initial brief. United States v. Durham, 795 F.3d 1329, 1330–31 (11th Cir. 2015) (en banc) (per curiam).

Similarly, we must affirm the district court's dismissal of Trevari's claims for failure to protect, administrative confinement, and denial of medical care. Trevari's initial brief focused entirely on the grievance procedure and whether the complaints he has filed demonstrate an exhaustion of available remedies.  He made no mention of the district court's finding that these four claims should be dismissed because an alternative remedy exists, meaning relief under Bivens is unavailable.[2] See Minneci v. Pollard, 565 U.S. 118, 131, 132 S. Ct. 617, 626 (2012) ("[W]here . . . a federal prisoner seeks damages from privately employed personnel working at a privately operated federal prison, where the conduct allegedly amounts to a violation of the Eighth Amendment, and where that conduct is of a kind that

_____

[2] Trevari's reply brief makes mention of the Bivens issue, saying defendants erred by asserting that any of his claims had been dismissed pursuant to Bivens.  However, issues addressed for the first time in a reply brief are not properly raised to the Court.  Lovett v. Ray, 327 F.3d 1181, 1183 (11th Cir. 2003) (per curiam).  Even if the Court were to consider this argument, Trevari is incorrect: the district court's order adopted the R&R's conclusion that Bivens relief was unavailable for these four claims.

typically falls within the scope of traditional state tort law . . . the prisoner must seek a remedy under state tort law. We cannot imply a <u>Bivens</u> remedy in such a case.").  While we construe <u>pro se</u> filings with leniency, <u>see</u> <u>Lorisme v. I.N.S.</u>, 129 F.3d 1441, 1444 n.3 (11th Cir. 1997), <u>pro se</u> litigants must still advise the Court in their filings of the issues they seek to raise on appeal, <u>see</u> <u>Timson v. Sampson</u>, 518 F.3d 870, 874 (11th Cir. 2008) (per curiam) (applying the waiver rule to a <u>pro se</u> litigant's initial brief).  For this reason we affirm the district court's dismissal of Trevari's claims for failure to protect, administrative confinement, and denial of medical care.

## III.

Trevari's remaining claims, alleging violations of the First Amendment and Equal Protection Clause, were dismissed by the district court for lack of exhaustion.  Before a prisoner may bring a suit complaining of prison conditions, the Prison Litigation Reform Act ("PLRA") requires the prisoner to exhaust all available administrative remedies.  42 U.S.C. § 1997e(a); <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1322, 1324–25 (11th Cir. 1998) (holding that § 1997e(a) applies to <u>Bivens</u> claims).  We review <u>de novo</u> the dismissal of a lawsuit for failure to exhaust administrative remedies under the PLRA, but the district court's factual findings are reviewed for clear error.  <u>Whatley v. Warden</u>, 802 F.3d 1205, 1209 (11th Cir. 2015).

If a prison publishes a grievance procedure, an inmate "must file a grievance and exhaust the remedies available under that procedure." Johnson v. Meadows, 418 F.3d 1152, 1156 (11th Cir. 2005) (quotation omitted). A remedy must be available before a prisoner is required to exhaust it. Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008). A remedy may be unavailable when the grievance process "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Ross v. Blake, 578 U.S. ___, 136 S. Ct. 1850, 1859 (2016). Proper exhaustion generally does not require that a prisoner resort to optional administrative procedures to address prison conditions. See Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015) ("The PLRA requires proper exhaustion that complies with the critical procedural rules governing the grievance process." (quotations omitted)). It is defendant's burden to prove that the plaintiff failed to exhaust his administrative remedies. Turner, 541 F.3d at 1082–83.

The Deyton Facility has an established grievance procedure set forth in the prison handbook. Detainees are encouraged to first seek informal resolution of any complaints. Regardless of whether they elect to seek informal resolution, all formal complaints are submitted on a grievance form to the Grievance Coordinator. The detainee should then receive a written response. The handbook then states "[i]f you are dissatisfied with the reviewing authority's response you

may request an appeal." The grievance response form has two appellate checkboxes: one indicates that there is newly discovered evidence relevant to the decision, and the other covers "[p]robable error committed by the reviewing authority." The handbook is silent on the steps a detainee should take if he never receives a response to a grievance.

On the record now before our Court, we are unable to determine whether Trevari exhausted the available administrative remedies on his First Amendment and Equal Protection claims. The R&R and the district court's order both assumed that a failure to file an internal appeal would mean Trevari's claims were unexhausted. However, the prison handbook states that when a detainee is dissatisfied with a grievance response, he "may request an appeal." This permissive language is ambiguous about whether an internal appeal is a necessary step to exhaust available remedies, or whether it is merely an optional requirement like the informal grievance process.[3] See Turner, 541 F.3d at 1083–84 ("[Appellant's] failure to comply with an optional administrative procedure does not amount to a failure to properly exhaust his remedies."); see also Dimanche, 783 F.3d at 1210 (requiring compliance with "critical procedural rules" (quotation omitted)). We have also held that where a prisoner files a second grievance after

---

[3] The affidavit submitted by a current grievance counselor at the Deyton Facility does not resolve this ambiguity. That affidavit merely states that "[i]nmates have the option to appeal any grievance," but it does not say whether internal appeals are mandatory and not permissive.

receiving an unsatisfactory grievance response and he receives a second response on the merits, prison officials cannot then fault him for failing to file an internal appeal. Whatley, 802 F.3d at 1215–16. Trevari has produced a number of grievances he says he filed and claims to have filed dozens more. However the district court never made factual findings that would allow us to understand whether the facts of this case are analogous to Whatley. Therefore, on the record now before us, it is not clear whether a failure to file an internal appeal would doom Trevari's claims.

It is also true that the district court never made a factual finding about whether Trevari filed a formal grievance regarding his church-access claim, nor whether he received a response.[4] Instead, the R&R noted that there was "no evidence that Plaintiff sought an appeal in regard to any grievance," and the district court accepted this finding. The district court found this was fatal to Trevari's claim because "[a]lthough it may indeed require more effort to appeal a grievance to which there has been no Level-1 Response (with a section for requesting an appeal), that does not mean that the ability to appeal was unavailable or that Plaintiff could not have requested an appeal when an official rejected or failed to

_____

[4] None of the grievances produced by defendants pertain to the church-access claim. However, Trevari submitted copies of additional grievances, including one that contained a request for church attendance. The district court acknowledged this grievance but noted it was "unsigned/unstamped." The district court ultimately dismissed this claim because there was no evidence of an internal appeal, without ever making a finding about whether the grievance had been filed or a response had been issued.

respond to a regular grievance." This incorrectly states the law. Where the grievance procedures provide no instruction on how to handle unreturned grievances, a prisoner should not be faulted for failing to use the prison's preferred method to appeal a claim. Id. at 1212 & n.2. Therefore, if Trevari did file a grievance regarding church attendance and received no response, he may have exhausted all available remedies on this issue.

Because the district court did not make explicit findings of fact regarding the required grievance procedures or the full remedies available to Trevari, we are not able to determine on the current record whether Trevari has additional remedies available to him. See id. at 1213 ("[W]e are a court of appeals. We do not make fact findings. We review them for clear error. Without any explicit findings of fact . . . we cannot undertake that review.") Therefore we vacate the dismissal of Trevari's First Amendment and Equal Protection claims and remand for the district court to make the necessary factual findings.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**