NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3305
_____

KENN A. DEFREITAS,
                              Appellant,

v.

MONTGOMERY COUNTY CORRECTIONAL FACILITY;
MONTGOMERY COUNTY; CORRECTIONAL MEDICAL CARE INC;
NIKKI HOLLER, RN IN HER OFFICIAL AND INDIVIDUAL CAPACITY;
MARY WILLIAMS, IN HER OFFICIAL AND INDIVIDUAL CAPACITY;
MARGARET CARRILO, IN HER OFFICIAL AND INDIVIDUAL CAPACITY;
LIEUTENANT BATES, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY;
CORPORAL BURGER, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY;
CAPTAIN PAUL CARBO, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY;
MAJOR ALBERT OTTINGER, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY;
ASSISTANT WARDEN CATANIA, IN  HIS OFFICIAL AND INDIVIDUAL
CAPACITY; ASSISTANT WARDEN JAMES A. FREY, IN HIS OFFICIAL AND
INDIVIDUAL CAPACITY; CORPORAL PALMER, IN HIS OFFICIAL AND
INDIVIDUAL CAPACITY; DEPUTY WARDEN DENNIS J. MOLYNEAUX, IN HIS
OFFICIAL AND INDIVIDUAL CAPACITY; CORRECTIONAL OFFICER GRIFFIN,
IN HIS OFFICIAL AND INDIVIDUAL CAPACITY; CORRECTIONAL OFFICER
HITTEL, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY; ABC COMPANIES 1-5;
JOHN DOES 1-5, IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES; JANE
DOES 1-5, IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES,

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-08-cv-5330)
District Judge:  Hon. Lawrence F. Stengel
_____

Submitted Under Third Circuit LAR 34.1(a)
April 26, 2013

Before: JORDAN, GREENBERG and NYGAARD, *Circuit Judges*.

(Filed: May 7, 2013)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Kenn A. Defreitas appeals the grant of summary judgment by the United States

District Court for the Eastern District of Pennsylvania to Montgomery County,

Montgomery County Correctional Facility, and Correctional Medical Care, Inc.

(collectively, "Appellees") on Defreitas's claims for cruel and unusual punishment under

the Eighth Amendment and for discrimination under the Americans with Disabilities Act,

42 U.S.C. § 12101, *et seq.*, and the Rehabilitation Act § 504, 29 U.S.C. § 794. For the

reasons that follow, we will affirm.

## I.    Background

Defreitas was arrested for simple assault and began his incarceration in pre-trial

detention at Montgomery County Correctional Facility ("MCCF") on July 18, 2008. He

is an above-the-knee amputee, and, until December 2008, he used crutches to assist his

mobility. After that time, he had use of a prosthetic leg. During Defreitas's

incarceration, MCCF housed him with the general population.[1] He claims that on various

_____

[1] MCCF is a prison divided into general population and restrictive housing units, such as maximum security and disciplinary segregation.

occasions Appellees denied him access to prison benefits and medical treatment and that they otherwise discriminated against him because of his status as an amputee.

He first claims that Appellees improperly denied him access to various recreation activities. MCCF offers to inmates in the general population "yard recreation, … gym recreation, and … weight room recreation." (App. at 261.) Defreitas used the yard and weight room several times prior to September 14, 2008. On that day, however, MCCF restricted him from participating in yard, gym, and weight room activities, explaining that he was not permitted to bring his crutches into the yard because they could be used as weapons or to manipulate the low hanging razor wire on the yard's wall and thus breach the security of the facility. In addition to that denial, Correctional Medical Care, Inc.'s ("CMC")[2] Medical Director decided that Defreitas could not use the gym or weight room because he used crutches for mobility.

In an effort to access the yard, gym, and weight room, Defreitas filed a grievance form.[3] An employee of CMC wrote in response, "[m]edical, per protocol, cannot allow you gym or weight room. Yard is not our jurisdiction." (App. at 1085.) Dissatisfied, Defreitas filed a grievance appeal on September 25, 2008. At the grievance appeal

---

[2] CMC is a private contractor that provided medical services at MCCF.

[3] MCCF has an inmate grievance procedure, and Defreitas admits signing a form on July 21, 2008, acknowledging receipt of the grievance procedure, and he further admits having seen the grievance policy posted on the housing section wall. The grievance procedure is a three-level process: at the first level, an inmate can bring a concern verbally or by written request; at the second level, an inmate can initiate a formal grievance using an inmate grievance form; if the inmate is not satisfied with the result, he may proceed to the final level in which he can appeal using an inmate grievance appeal form.

meeting, an MCCF officer explained the security concerns associated with the crutches and offered to move Defreitas to the medical housing unit where he could have wheelchair access to a yard. Defreitas rejected that offer because the medical unit inmates had limited access to library materials and religious resources, and he insisted that MCCF build a ramp to the general population yard so that he could access it by wheel chair. MCCF declined the request, but agreed to have his condition reviewed by the medical department. On October 8, 2008, MCCF explained that it would permit Defreitas to go to the yard alone on his crutches every morning from 7:30 to 8:30 A.M., and that it would permit him to use the gym and weight room. From October 8 to December 19, 2008, Defreitas made several visits to the yard and weight room with his crutches.

Defreitas also complained that, despite his repeated requests, Appellees delayed for five months his receiving a prosthetic leg. On July 22, 2008, during his intake at MCCF, Defreitas discussed his request for a prosthetic leg, and he continued to discuss it with CMC on August 12 and November 3, 2008. Until about six weeks before he received his prosthesis, he did not submit a grievance form to have the matter considered by Appellees. Instead, he privately contacted Peter Michener, who appears to be a third-party prosthesis provider who had worked with Defreitas before in fitting a prosthetic leg, in an attempt to obtain a prosthesis. Eventually, in early November 2008, Mr. Michener was able to visit Defreitas in prison for a fitting, and, on December 19, 2008, he received

4

his prosthetic leg.[4]  After that, he was given access to the yard, gym, and weight room without restrictions.

Defreitas had other complaints about Appellees' alleged failure to accommodate his disability.  He contends that he was forced to hop from his cell to the day room to get his meal tray because he could not use his crutches and carry the tray at the same time.  He says that he was subjected to ridicule by correctional officers, noting an incident where an officer pushed his leg release button during a pat-down search.[5]  He also contends that he slipped on numerous occasions due to the slippery condition of the floors because he was housed next to showers.  And he contends that those showers were inadequately equipped for his use, so that he "twisted [his] shoulder a few times trying to catch [him]self from hitting the ground." (App. at 1284.)  Defreitas never filed grievance forms about those complaints but, despite that failure, and upon Defreitas's request, Appellees moved his housing location several times in an attempt to remedy his problems with the allegedly slippery conditions.  Lastly, he complains that he was forced to submit numerous request forms to receive treatment for his medical conditions, though he filed no grievances in that regard either.

On November 7, 2008, Defreitas filed a *pro se* complaint against Appellees and certain individuals working in the prison (collectively, with Appellees, "Defendants"),

---

[4] The record is unclear on whether Michener made the leg before Defreitas was incarcerated or made it during his incarceration.  In any event, that fact does not affect the disposition of this case.

[5] Appellees' witnesses denied witnessing or participating in any ridicule of Defreitas.

5

asserting claims related to his inability to go to the yard, gym, and weight room.[6]  On

August 6, 2009, after being released from prison, Defreitas, by that time represented by

counsel, filed an amended complaint alleging a violation of 42 U.S.C. § 1983 for cruel

and unusual punishment (Count 1); a violation of the Americans with Disabilities Act

(the "ADA")  and of § 504 of the Rehabilitation Act (the "RA") (Count 2); retaliation

under § 1983 (Count 3); retaliation under the ADA and RA (Count 4); and intentional

infliction of emotional distress (Count 5).  In response, Defendants filed motions to

dismiss, and the District Court dismissed Defreitas's amended complaint against the

individual defendants, Counts 3, 4, and 5 as to all Defendants, and Count 2 as to CMC.

Thus, the two remaining causes of action were as follows: Count 1 (§ 1983 – cruel and

unusual punishment) against Montgomery County, MCCF, and CMC, and Count 2 (ADA

and RA claims) against Montgomery County and MCCF.  Subsequently, the parties filed

motions for summary judgment.

The District Court concluded that Defreitas failed to exhaust his administrative

remedies concerning complaints about procuring his prosthesis, shower and housing

issues, denial of medical care, and officer harassment.  The Court then held that there was

insufficient evidence to create a genuine dispute of material fact with respect to

---

[6] Defreitas's complaint is light on facts and formal causes of action.  Construing it liberally, we will assume that he alleged causes of action for violations of his Eighth and Fourteenth Amendment rights, and discrimination under the Americans with Disabilities Act and Rehabilitation Act.  The parties argue in terms of the Eighth Amendment, but, because Defreitas was both in pretrial detention and confined to MCCF after his conviction, his claims are properly analyzed under both amendments.  *See Hubbard v. Taylor*, 538 F.3d 229, 231 (3d Cir. 2008) (providing that claims related to the conditions of confinement for pretrial detention are analyzed under the Fourteenth Amendment).

Defreitas's § 1983, ADA, and RA claims regarding the exhausted issues. Accordingly, it entered an order denying Defreitas's motion for summary judgment and granting summary judgment to Appellees.

This timely appeal followed.

## II. Discussion[7]

In his appeal, Defreitas argues that the District Court erred in concluding that he failed to exhaust his administrative remedies for his claims, except as to those claims relating to denial of use of the yard, gym, and weight room. Defreitas also argues that, on the merits, the Court failed to view the evidence in the light most favorable to him and that there was ample evidence to create a genuine dispute of material fact for each of his claims. We disagree on all points.

### A. *Failure to Exhaust Administrative Remedies*

The Prison Litigation Reform Act of 1995 ("PLRA") requires that, before bringing claims under § 1983 or any other federal law, prisoners must first exhaust the

---

[7] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. "Review of a district court's decision to grant a motion for summary judgment is plenary." *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 676 F.3d 318, 323 (3d Cir. 2012) (internal quotation marks omitted). "[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)) (internal quotation marks omitted). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing the record, we must construe all reasonable inferences in the light most favorable to the nonmoving party. *Id.* at 255.

7

administrative remedies that are available. 42 U.S.C. § 1997e(a).[8] We have stated that prison grievance procedures are administrative remedies that must be exhausted under the PLRA before bringing suit. *Concepcion v. Morton*, 306 F.3d 1347, 1348-49 (3d Cir. 2002). When presented with a complaint in which some claims have been exhausted through administrative means but others have not, courts are to proceed only with the claims that have been exhausted and dismiss those that have not been. *See Jones v. Bock*, 549 U.S. 199, 219-24 (2007) (explaining that PLRA requires claim-by-claim dismissal, not dismissal of entire action when some claims are not exhausted).

Defreitas's original complaint only alleged claims related to his access to the yard, gym, and weight room, and there is no dispute that he exhausted his administrative remedies for those claims, as he filed a formal grievance and completed the appeals process. Defreitas later filed an amended complaint after he was released from custody, and in that amended complaint he added § 1983, ADA, and RA claims for the poor shower conditions, housing him near the showers, failure to procure his prosthetic leg, requiring him to hop to receive his meals, failure to timely respond to his medical requests, and prison officers making jokes about his leg. There is no dispute that Defreitas did not complete the appeals process for any of those added claims. Despite that failure, Defreitas argues that he was not required to file those grievances and exhaust

---

[8] Specifically, that statute provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

8

his administrative remedies because he was no longer in prison when he filed his amended complaint.

He is mistaken. As the District Court explained, we have held that the exhaustion requirement will continue to apply, even after a prisoner has been released, when the former prisoner amends a complaint filed while he was in prison. *Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir. 2002).[9] Specifically, in *Ahmed*, we stated that, "[a]lthough Ahmed would have been free of the strictures of the PLRA if he had filed a timely complaint after his release from prison, he is bound by the PLRA because his suit was filed on July 29, 1998, almost three years before he was released from prison. It follows that the proffered amendments [to his complaint containing unexhausted claims] would have been futile … ." *Id.* Put another way, a plaintiff's status as a prisoner for purposes of the PLRA is judged as of the time he files his original complaint. At that time, Defreitas only complied with the exhaustion requirement with respect to his claims for the yard, gym, and weight room. Accordingly, the District Court did not err in concluding that he could only proceed with those exhausted claims,[10] and summary judgment in favor of Appellees was proper on the other claims.

---

[9] Defreitas attempts to distinguish *Ahmed* and cites *Prendergast v. Janecka*, No. 00-3099, 2001 WL 793251, at *1 (E.D. Pa. July 10, 2001), for the proposition that the "administrative exhaustion requirement does not apply because the amended complaint was filed after plaintiff was released from prison and was no longer an inmate – even though the original complaint was filed while he was in custody." *Ahmed*'s holding is clear, and inasmuch as it conflicts with *Prendergast*, that case does not remain persuasive. Accordingly, Defreitas's attempt to distinguish *Ahmed* is without merit.

[10] Defreitas also alleges that he did exhaust his administrative remedies for his claim related to his prosthesis. He points to evidence in the form of his personal journal

B. *Section 1983 Claims*

Defreitas next argues that the District Court erred in granting Appellees summary judgment on his § 1983 claims under the Eighth Amendment for cruel and unusual punishment. As noted above, the only claims that Defreitas exhausted were those related to his denial of access to the yard, gym, and weight room. Therefore, we focus on only those claims.

To bring a § 1983 claim against a local government or government entity (including a private corporation, like CMC, that is alleged to be acting under color of state law, *see Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003)) for the actions of an employee of one of those entities, a plaintiff cannot rely upon respondeat superior liability, but he must show that the entity had a policy or custom that caused his deprivation of a constitutional right. *Monell v. Dep't. of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). "A policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict. A custom is an act that has not been formally approved by

---

entries that indicate he filed a grievance regarding his prosthetic leg, but that MCCF ignored that grievance. There are two problems with that evidence. First, it is belied by Defreitas's own testimony in which he admits that he never filed a formal grievance for his prosthetic leg. (App. at 729-30.) Second, it appears that his journal entries to the contrary were written after he filed his complaint in district court. (*Compare* App. at 1350-52 (providing journal entries that he filed a grievance as early as November 10, 2008), *with* Addendum to App. at 2 (providing the District Court docket that indicates Defreitas filed his complaint on November 7, 2008).) Section 1997e(a) requires a prisoner to exhaust his administrative remedies before a lawsuit can be "brought." 42 U.S.C. § 1997e(a). Accordingly, any use of those remedies after filing fails to satisfy § 1997e(a)'s requirement.

10

an appropriate decisionmaker, but that is so widespread as to have the force of law." *Natale*, 318 F.3d at 584 (alteration in original) (citation and internal quotation marks omitted). A policy or custom can be established in three ways: (1) the entity or supervisor promulgates an applicable policy statement and the act the plaintiff complains of is the implementation of that policy; (2) the policymaker, without a formally announced policy, violates federal law itself; or (3) the "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Id.* (alteration in original) (internal quotation marks omitted).

Although Defreitas and the District Court viewed his constitutional claims as predicated upon the Eighth Amendment, because his claims regarding denial of access to the yard, gym, and weight room stem from his pretrial detention as well as from his incarceration after he was convicted and sentenced,[11] they are more properly viewed as arising under the Fourteenth Amendment for the pretrial period, *Hubbard v. Taylor*, 538 F.3d 229, 231 (3d Cir. 2008) ("[W]hen pretrial detainees challenge their conditions of confinement, we must consider whether there has been a violation of the Due Process Clause of the Fourteenth Amendment."), and under the Eighth Amendment for conditions

---

[11] Defreitas was arrested on July 18, 2008, for simple assault and confined to MCCF on that date. He was not convicted and sentenced for that assault charge until December 1, 2008. He gained full access to the yard, gym, and weight room after obtaining his prosthesis in late December 2008.

11

after he was convicted and sentenced, *Ingraham v. Wright,* 430 U.S. 651, 671, n. 40 (1977) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions."). Under the Fourteenth Amendment, the conditions imposed upon a detainee must not amount to "punishment." *Bell v. Wolfish*, 411 U.S. 520, 535 (1979). We have distilled the teachings of *Bell* into a two-part test: A condition of confinement will not amount to punishment when "legitimate purposes are served by the[] conditions, and … the[] conditions are rationally related to these purposes." *Hubbard*, 538 F.3d at 232 (internal quotation marks omitted). As for claims under the Eighth Amendment's protection against cruel and unusual punishment, a prisoner asserting a violation of that Amendment "must demonstrate that prison conditions deprived him of life's minimum necessities, that the deprivation was sufficiently serious, and that a prison official acted with deliberate indifference in subjecting him to that deprivation." *Renchenski v. Williams*, 622 F.3d 315, 338 (3d Cir. 2010) (internal quotation marks omitted).

Defreitas fails to show any genuine dispute of material fact as to either the existence of a policy or custom or the deprivation of his constitutional rights. Although Defreitas identified evidence that, when he was denied access to the yard, gym, and weight room, various prison officers and medical personnel told him that it was "policy" or "protocol" to not allow persons with crutches in those areas, he adduced no evidence that any of the policymakers for Appellees established such a policy. And, in fact, Defreitas did not believe that the prison was acting pursuant to a set policy but that his restricted access was due to MCCF officers' being "inept." (App. at 384.) Indeed, in his

12

testimony he stressed the haphazard access he had to those recreational facilities since beginning his confinement, which belies any argument that MCCF officers were acting pursuant to a policy or custom.[12]

Even if Defreitas could overcome that evidentiary deficiency, his deprivation of the ability to use the yard, gym, and weight room as used by the general population did not amount to "punishment" under the Fourteenth Amendment. As explained below, Appellees' denial of his use of those forms of recreation were for legitimate purposes – that is, fear that Defreitas would use his crutches as weapons or to manipulate the low-hanging razor wire on the prison walls. Thus, Appellees' restriction on Defreitas's use of crutches in those areas was for legitimate purposes and rationally related to those purposes. And his claim thus fails under the Fourteenth Amendment's protections against pretrial detainee punishment.

His claim fails under the Eighth Amendment as well. The District Court correctly concluded that the punishment he identifies as "cruel and unusual" – that is, his deprivation of the ability to use the yard, gym, and weight room as used by the general population – fails as a matter of law. (*See* App. at 27-29.) Indeed, contrary to any successful claim that Appellees were "deliberately indifferent" to Defreitas's denial of access to the yard, gym, and weight room, the record reflects that Appellees actively worked with Defreitas through the grievance process to permit him access to those areas.

---

[12] It is perhaps arguable that, because CMC's Medical Director denied Defreitas access to the weight room and gym, that might be a "policy" sufficient for § 1983 liability. But, for the reasons expressed immediately below, Defreitas fails to show that that policy resulted in unconstitutional punishment.

13

Defreitas has thus failed to show a genuine dispute of material fact as to his Eighth-Amendment-based § 1983 claims.

C. *ADA and RA Claims*

With respect to his ADA and RA claims, Defreitas argues that the District Court erred because it failed to view the evidence in the light most favorable to him. To make a *prima facie* case under ADA or the RA,[13] the plaintiff must establish that:

> (1) he is a qualified individual; (2) with a disability; (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability.

*Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d. 524, 553 n.32 (3d Cir. 2007). Defreitas argues that he was discriminated against because of his status as an amputee. He also argues that MCCF failed to make reasonable accommodations for his disability. *See* 28 C.F.R. § 35.130(b)(7) (requiring public entities to make reasonable accommodations to avoid discriminating on the basis of disability).[14]

There is no dispute that Defreitas qualified as an individual with a disability, and that he was denied the benefit of using the yard, gym, and weight room for a limited time. As explained by the District Court, however, the record is devoid of evidence, other than Defreitas's own conclusory journal entries in which he stated he was being discriminated

---

[13] The substantive standards for determining liability under the ADA and RA are the same, and we thus analyze them together. *McDonald v. Pa. Dep't of Pub. Welfare*, 62 F.3d 92, 94-95 (3d Cir. 1995).

[14] Reasonable accommodations must give a disabled prisoner "meaningful access" to the prison program in question. *Alexander v. Choate*, 469 U.S. 287, 301 (1985).

14

against, that Appellees denied Defreitas such access because he was an amputee. The denial of that access was because of legitimate concerns as to the security and the safety of others since his crutches could be used as weapons or to manipulate the low hanging razor wire on the yard's wall. Those concerns are entitled to deference because prison policies concerning security "are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment." *Turner v. Safley*, 482 U.S. 78, 86 (1987). Moreover, once Defreitas received his prosthetic leg, Appellees permitted him to use all of those facilities, which undermines the claim that it was his disability that prevented his access to the yard, gym, and weight room.

Similarly, Defreitas's proposed accommodation for the prison to build a wheelchair ramp for the general population yard[15] was properly denied. After Defreitas completed the grievance process, MCCF provided him a reasonable accommodation in the form of his own hour in the yard. And he was also given access to the gym and weight room with his crutches, again after he completed the grievance process. Thus, although Defreitas may not have gotten the accommodations he wished, he certainly received reasonable ones. Moreover, it would be antithetical to the grievance process, as well as the PLRA, for Defreitas to succeed on a claim of liability after he has successfully pursued a grievance. For those reasons, and for the reasons expressed by the District

---

[15] The yard used by prisoners housed in the medical wing already had such a ramp.

Court, there is no genuine dispute of material fact as to his claims under the ADA and RA.

## III. Conclusion

For the foregoing reasons, we will affirm the District Court's denial of summary judgment to Defreitas and its grant of summary judgment to Montgomery County, MCCF, and CMC.